Colcock, J.
In this case I shall take no notice of the facts which have been brought to the view of the court, as to the illegality of the votes given, and the conduct of the managers. I fee] no inclination to extend the cognizance of this court, and am of opinion that we have no power to interfere in the present contest. I would remark here, that throughout the argument, the persons who decided this question, are spoken of as managers of an election. It is true, that they acted in that capacity in receiving the votes ; but when the question of the right to the office was to be tried, they acted as a court for the purposes, (says the act) of hearing and determining (oyer and terminer,) the matter in dispute, and of course were vested with judicial powers; and being so vested without an appeal, their decision is final and conclusive. In all the variety of cases, which have been quoted from English authorities, it will be observed, that there was no other tribunal to which the contending parties could resort, but to the court of King’s Bench. But here, the legislature have expressly provided a tribunal, by which, the right of these persons could be decided. Had. they not done so, we should have taken into consideration their conduct as managers’. It was urged that *169 this court should do so, because the court and managers were the same persons. This argument may, with propriety, be urged to the Legislature, that it was not proper to make the managers judges of the correctness of their own conduct; but it can weigh nothing with me. The case relied on, from Bay’s Reports of the commissioners of the tobacco inspection, bears no analogy in my mind to the present case; because the power given, was a ministerial one, and a rule of conduct was prescribed by the act. In all such cases, the Court of Sessions will say how persons shall act, but when a judicial authority is given, they can only say they shall act, but will not say how. Strange’s Rep. 881. 892. 3 Binney’s Rep. 273. Here the persons appointed by the Legislature have acted; and I am of opinion that we cannot, with propriety, question the justness of their decision. And further, it is a matter of importance to the community that there should be a sheriff, although it be not a matter of importance who it may he. The Legislature, it is probable, intended this as a summary and expiditious mode of deciding, and I think never contemplated the interference of any other court. I am therefore in favour of the motion.
Brevard, J.
The motion in this case, is to reverse the decision of the court of General Sessions, . for the district of Darlington, by which a peremptory mandamus was ordered to issue to the defend- *170 antlb as mauaSers of an election for sheriff of the said district, commanding them to certify to the govern-our of the state, the due election of the prosecutor, Nathan Hanks, to fill the office of sheriff of the said district, pursuant to a late act of the Legislature of this state.
An-application was. made, by way of suggestion, to the district court, for a conditional mandamus ; or, in the alternative, to certify as required by the prosecutor, or shew cause to the contrary. The cause shown was deemed insufficient, and the conditional mandamus issued. The service of this mandamus was accepted by the defendants. The supposal of the writ, states, that the office of sheriff of Darling-ton district being vacant; and the defendants being appointed managers to conduct an election of an officer to supply the vacancy, according to law, held an election for that purpose, the result of which was, that the prosecutor {Hanks,) was duly elected; and was declared so to be,, by a majority of' forty seven votes.
The writ was returnable to the court of General Sessions, then sitting in Darlington district, on the Friday next, after the teste thereof; viz. the third Monday in March, 1812. The defendants appeared and made a return to this effect: That the office being vacant, as stated in the writ, the defendants were appointed managers of an election to fill the vacancy, pursuant to directions from the executive, and agreeably to law. That three of them only, *171 were present when the votes were counted. That r the prosecutor was not declared duly elected, nor considered so to be. That a scrutiny was demanded by John Me Ra, a candidate for the office; and that upon a full hearing upon the scrutiny, it did not appear that the pi’osecutor had a majority of legal votes. And that in duty and conscience, the defendants refused to certify to the governor, the election of the prosecutor, but certified for reasons set forth, in the returns, that the election was null and void.
To sundry facts and circumstances, set forth in the supposal of the writ, tending to charge the defendants with partiality and misconduct as managers, they reply in detail; and enter into particular vindication of their conduct and characters ; and close, by submitting the following facts and legal questions, viz:
They alledge that Peter JEdwards was appointed, together with George Bruce, to manage the election held at Darlington court-house ; and that the election at that place was conducted by George Bruce alone; which was not according to the directions of the Legislature. They further alledge, that only three of the six managers appointed, met at the place appointed for constituting the votes, and declaring the election. And they submit, whether the election ought not to be considered void, as it was not managed by all the managers appointed to manage the same, conjunctively, but by some of them in the *172 a^sence Ae others, and without their assistance or concurrence. They also submit, whether they can legally be compelled to make any other decision, than that which they did make; or to decide by any other judgment than their own, however incorrect it may seem to be; as in quality of managers, they exercised a judicial discretion, and did not act in a mere ministerial capacity. It was objected, and argued in the district court, that the return ought to be quashed for inconsistency ; because after setting forth the proceedings of the defendants as managers, and stating facts and reasons in justification of their conduct as such, the return goes on to state other facts and reasons, to show that the defendants could not legally act as managers in the premises, and were incompetent to hold and declare the election.
Part of the return was quashed for inconsistency, and that which was not quashed being adjudged insufficient, a peremptory mandamus was ordered to issue. From this decision of the district court, the defendants entered an appeal, which is the subject of the present motion. To form a correct opinion, Respecting the propriety and sufficiency of the return, and the legality of the decision of the district court, it will be necessary to attend to the act of Assembly, passed in the year 1808, authorising the election of sheriffs of the several district courts by the resolution of the Legislature, appointing the pianagers of elections for members of theJLegislature passed in December, 1809.
*173 The Act of 1808, declares that in case any va-caney shall happen, in the office of sheriff of any district court, by death, removal out of the state, resignation, removal from, or expiration of office, or otherwise, the same shall be filled by an election; to be held and conducted as elections for members of of the state Legislature, after twenty days notice by advertisement. And the managers are required to meet on Thursday next, after the election, to count over the votes and declare the election. They are also required to certify to the governor, that the person who shall have the greatest number of votes has been duly elected ; unless the election shall be contested, in which case, the mananagers are au-thorised and required to determine such contested election, on the grounds stated by the person who shall contest the same, on the day the votes are counted over. The act further declares, that if the election is not determined to be void, the managers shall certify to the governor, that the person having a plurality of votes has been duly elected. And the governor shall commission that person, who shall be certified to him as having been duly elected. If no person shall have a plurality of votes, the managers shall certify accordingly; and the governor shall fill up the vacancy in the interim until an election shall take place. So where an election shall be declared void, the governor shall supply the vacancy.
The resolutions of the Legislature, appointing managers of the elections for members of the senate, and house of representatives of this state, (wh© *174 were managers of the elections for sheriffs, at the time when the election in question was directed to ]je held,) passed in December, 1809. By the resolution relating to Darlington district, it appears that George Bruce, and Peter Edwards, were appointed to manage the election at Darlington court-house; William Brantlett and Moses Waters, to manage at Elijah Hutson’s: and Daniel Dubose and George Huggins, to manage at Enos James’.
This resolution directs, that one manager for each place of election, shall meet at Darlington courthouse, to count over the votes, and declare the election. From these premises I proceed to en-quire 1st, Whether the proper legal remedy in a case like the present, is by a writ of mandamus; and if it is, 2nd, Whether under the circumstances of this case, the prosecutor is entitled to the benefit of it. This last enquiry will involve the question, whether the return to the writ, ought to be deemed sufficient; and whether although it may be, in some respects, defective, a peremptory mandamus ought to issue.
1st, A mandamus is a criminal process, relative to civil rights. In England it issues out of the King’s Bench, and is denominated a prerogative writ. In this country, the sources of all power and prerogative is the people. For the public good, the Courts of Sessions, of this state, are entitled to exercise the same authority, and general super-intendeecy over all inferior jurisdictions, and *175 persons, which the Court of King’s Bench, in England, has a right to exercise; to compel them to do justice, in matters appertaining to their office and duty, and to enforce obedience to acts of the Legislature. And it is more especially the duty the courts, to exercise this power, where the administration of justice, and the public interest is concerned. Bull. N. P. 199. 3 Black. Com. 110. 2 Esp. Dig. 665. 3 Burr. 1267.
In all cases, where there is a specific, legal right, there ought to be a specific, legal remedy; and I believe it may be safely asserted, as a general proposition, that where there is, with us, such a .right, there is also a corresponding remedy. It is an established maxim of law, that where there is a specific, legal right, and no other specific, legal and operative remedy, a mandamus is a proper remedy, upon reasons of justice, and public policy, to preserve order and good government. Where any one has been unlawfully kept out, or dispossessed, of an office, to which he is entitled, it lies to admit, or to restore him. 4 Burr. 2044. 3 Burr. 1266. 1 Black. Rep. 547.
It is always incumbent upon him, who claims the benefit of this process, to shew ; 1st, That he has a specific, legal right; and, 2nd, That he has no other specific, legal remedy.
It must be admitted, that the office of sheriff is of considerable importance to the public: and it mate- *176 ria]]y concerns the administration of justice, and the J . r . . peace and good order of civil society. It is mter-esting to the public, that an officer of such consideration, if he has a right to the office, and is unlawfully kept out of it, should be admitted to fill it; and if he has been unjustly and illegally removed from it, that he should be restored to it, as speedily as possible. It is also an important right, which the individual, who is injured may legally insist upon, and which ought to be secured to him ; the oflice being one of profit as well as trust.
It is said to be discretionary in the court, to grant or refuse a mandamus; but a discretion, regulated by the rules and principles of law, must be understood ; and not an arbitrary and capricious discretion. Therefore, every citizen must be legally entitled to the aid of this process, who can shew clearly to the satisfaction of the court, that he has such a right, as the law ought to protect and vindicate, and has no other specific remedy, of which he can legally avail himself.
If then, in this case, it should be admitted that the prosecutor is entitled to fill the office of sheriff; if the defendants ought to have certified that he was duly elected to that office, and that they improperly, and illegally, withhold their certificate, by means of which his commission is refused, and another person has been commissioned in his stead ; and if he has no other legal remedy, whereby he can obtain adequate relief, it seems beyond all doubt, that he is entitled *177 to this writ of mandamus. Whether the proseeutor has made out such a case, as entitles him to the writ upon these principles, or not, will be the subject of enquiry in the sequel. Meanwhile, it is necessary to notice, and answer the objection of the defendants, that coneeding the point, as to the right of the prosecutor to the certificate he claims, and that the defendants unjustly withhold it, yet that he has another specific legal remedy, and therefore he cannot be entitled to a mandamus. A quo warran-to, it is pretented is the proper remedy in a case of this kind.
In this country, the people being the fountain of power and jurisdiction, as the crown is said to be in England, if any person, Or corporation, take upon them to exercise, any office or jurisdiction, without being legally authorised so to do, the court of General Sessions, possessing the powers of the court of King’s Bench in England, will punish them for such usurpations; and to that end, it is said will require them to show by what authority they claim to exercise any particular office or jurisdiction. The old method of doing this was by quo warranto, which has been changed to an information in natur e of a quo warranto. The statute 9 Ann. c: 20. (P. L. app : No. 1p.21.) extends and facilitates this remedy, in relation to usurpations of, and intrusions into, or unlawfully holding of, the offices and franchises mentioned in the act, that is, corporation franchises and offices. 2 Just. 282. 9 Coke. 28. 6 Com. Dig. 162. 2 Str. 1213. 1 Str. 621. 299. 4 Black. Com. 2 Just. *178 496. 2 Hawk. P. C. Bull. N. P. 210. 1 Burr. 573.
It is easy to see, that this remedy cannot be properly applied in the present ease : first, because the office of sheriff is not a corporate office, or franchise: secondly, because if it has been filled by the govern- or, in consequence of the certificate of the managers, that the election was void, it has been lawfully fil- . led; and the incumbent is not an usurper, or unlawful intruder: and thirdly, because, although the present incumbent may have intruded himself unlawfully into the office, and although he may be ousted from it by a quo warranto, yet it would not follow, as a matter of course, that the prosecutor is entitled to fill the office, nor wrnuld this process admit him to it, or reinstate him therein.
The principal object of a quo warranto, is to ascertain disputed facts, and dispossesses the person who has unlawful possession. In this case there is no necessity for ousting the person appointed ad interim. Besides, it may well be doubted whether, consistently with the third article of our constitution, this mode of criminal prosecution can be legally used, except in qui tarn prosecutions, where the informer is interested in recovering the penalty, and which partake of the nature of civil actions. 4 Bl. Com. 303. Bac. Mr. “ QuitamP
It appears to me, that a palpable and gross viola- , tion of public duty, by persons appointed to execute *179 an office., or trust, relating to tlie public; or the unlawful exercise of public functions, are offences punishable by indictment; and that proceedings, by way of information, or by quo warranto, are unnecessary, as well as unconstitutional.
Another objection, of the defendants, to the proceedings by mandamus is, that the office of manager of an election cannot be imposed by law on any one : that he who undertakes to act in such an office, does it voluntarily, and in discharging the duties thereof, acts gratuitously; and, therefore, it is inferred, that he cannot be compelled to act otherwise, than seems to him right and proper» This objection is not well founded in reason, or the principles of law. If the office was one which did not concern the public, the argument might be good; but the office of managers of elections, is one which deeply affects the interests of society; and if any one will accept the office, and undertake to act in it, (which he is not compelled to do,) he must take care to act according to law, and according to his best ability and knowledge. If he will not do so, the courts of General Sessions have the power, and it is the duty of those courts, to coerce him, and compel obedience to the law.
But it is again objected by the defendants, that in the exercise of the duties and powers of managers, they acted judicially, as well as ministerially ; and that they had a discretion, which cannot be examined and controlled by any other tribunal; unless *180 ^ ^e Pun^1 them for their misconduct j and, therefore, a mandamus does not lie.
If the decisions of the managers, in the course of the election, and in conducting the scrutiny in question, were in the exercise of authorities purely judicial, and it appeared that they had kept within their jurisdiction; notwithstanding it might appear to another tribunal, that their judgment was not sound, and that their decisions were erroneous, yet no writ of mandamus would lie, to oblige them to adopt any other rule of decision, than that which their own judgment would sanction.
But the authority of managers is not purely judicial. Their discretion is limited, by legal restraints; and being inferior magistrates of a mixed character, even though they should confine themselves within the bounds of their jurisdiction : yet they must be subject to the visitatorial jurisdiction of the court of General Sessions, to regulate and correct them in the exercise of their discretionary power. 10 East, 403. 7 East, 92. If they act from undue motives, or gross error, or misconception of the subject, it seems unquestionable that the court of General Sessions may lawfully interpose, to prevent a failure of justice, and defect of police; to vindicate the rights of the community, and promote the public welfare.
2nd, Having disposed of the objections to the mode of proceeding, adopted on the part of the prosecutor; it remains to consider the merits of his *181 claim, and the sufficiency of the defence, which has , . been made in opposition to it.
To authorise the interposition of the court of General Sessions, by way of mandamus, it ought to appear to the satisfaction of the court, that there is a specific, legal right, as well as the want of a specific, legal remedy. The party, claiming the aid of this process, must show a title; at any rate, a good colour of title. Bull. N. P. 199. 1 Str. 536. It must be prima facie, a good legal title, and not an abstract moral right. Where the right plaintiff appears, a mandamus generally goes upon the first motion, to admit him who has the right. The writ concludes with commanding obedience, or cause to be shewn to the contrary. Bull. N. P. 201.
If the return, upon the face of it, is insufficient, the court will grant a peremptory mandamus, and if that is not obeyed, an attachment for contempt, Esp. Big. 686. If the return, upon the face of it be good, but the matter of it be false; an action upon the case lies for the party injured, against the persons making such false return; and the return may be joint or several. The writ shall be taken reddendo singula singulis,
If the matter concern the public government, and no particular person be so interested as to maintain an action, the court will grant an information, (or indictment,) against the persons making the false return. Salk. 374. Bull. N. P. 202. If the re *182 turn be falsified, the court will grant a peremptox'y mandamus. Salk. 340. This was the method ox proceeding at common law. ■ The statute 9 Ann, c. 20. extends and facilitates the procedure, in relation to corporate offices, and franchises.
The prosecutor in this case, having shewn a pri-ma facie legal title to the certificate claimed from the defendants ; if no return had been made, or if the return, upon the face of it, appeared manifestly insufficient, it was certainly right to grant a peremptory mandamus, to compel the defendants to do the act required of them, which it would appear to he their duty to do. But, it seems to me, the return, upon the face of it, is substantially sufficient, though the matter of it may be, for ought I know, false.
If the return is substantially sufficient, upon the face of it, the court ought not to have granted a peremptory mandamus, until the return was falsified in a civil action, or criminal prosecution, wherein the disputed facts had been tried and ascertained by a jury. Doug. 157. The return is clear and express, that the prosecutor was not duly elected ; and the facts are stated from which this conclusion is drawn. Some of these facts have been controverted, by the prosecutor ; but they cannot be legally decided on, but by a jury. 3 Burr. 1265. 1 Wils. 266.
Before the mandamus was granted, it ought to have appeared that there had been a default. N. P. 199.
*183 From the return, it does not appear that there i a i , , , “ a . was any default, which can be construed to give any right or title to the prosecutor, without prejudging questions of fact, which are ■ properly triable by a jury.
The court will never presume that á public officer has not done his duty. There is no proof that the managers have been wanting in integrity; that they have violated their oaths. If they have acted ignorantly, mistaken their duty, and made a false, or inconsistent return; yet, if the right of the plaintiff is still doubtful, the court ought not to grant a peremptory mandamus. 2 Esp. Dig. 665. But it has been said, the return is inconsistent, and the greater part of it was quashed for that cause ; and the rest of the return being insufficient on the face of it, the court did right in-granting a peremptory mandamus.. To this I answer, that if the return could be considered so inconsistent, as to justify the court in quashing it, yet I think it would have been more advisable to have afforded the defendants an opportunity of amending it j especially as they acted under the obligation of an oath, in a public capacity, and cannot be supposed well versed in . matters of this sort, wherein scientific skill, and technical ingenuity may be necessary to a complete legal de-fence. In addition to this, it may be worthy of consideration, that there might.be some danger, from negligence or design of bringing into an important public office, a man who is not the choice of those by whom he ought to be fairly elected, by the mere *184 i^consxsteney of a return to a mandamus. «But, waiving every consideration of this sort, I am of opinion the return is not justly chargeable with inconsistency, and that it ought not to have been quashed. I admit that a return to a mandamus, may be quashed for inconsistency. 5 Term. Rep. 66. But I deny that in this case, there was any such inconsistency, as is to be found in the cases where the return has been quashed. In the case of the King vs. Mayor of York, (5 Term. Rep. 66.) the return stated, that Sinclair was duly elected; which could not be the case, if the council had not been lawfully assembled ; and then it proceeded to state, that the council was not lawfully convened, which is a palpable inconsistency. There is no such inconsistency in the present case. The defendants state the facts, which it was their duty to do, and submit the questions arising from them to the court. They do indeed state, that the election was held, and conducted, and the scrutiny disposed of, in the manner they represent; but they do not say that it was a lawful election ; but on the contrary, that the election was illegal and void: so, that however inconsistently they may have acted in managing the election, and conducting the scrutiny, no inconsistency is found in the return.
The return is clear and distinct, in stating that the prosecutor was not duly elected, by a plurality of legal votes, nor considered to be so ; and that the election upon a scrutiny was declared to be void. The inconsistency is not found in the general result, *185 ©r conclusion from the facts set forth; the return only shews that there was an inconsistency m the conduct of the managers, in first doing, as lawful and right, what they afterwards return to he illegal and void. This surely does not impeach the return; for it was their duty to state facts; and it is not improbable that after having done, what they conceived, at the time, to be authorised and proper, they became doubtful of the propriety and correctness of what they had done, or were satisfied that it was wrong. In either case they have .acted properly in stating the facts, and submitting the questions Of law arising from them, to the court. And as there is ho good ground for questioning their integrity, I am of opinion their return is entitled to great indulgence.' The greatest inconsistency they have committed, was, in my opinion, in certifying at all, for reasons I shall presently mention. It is a reasonable, and wise rule, that if it appear upon the face of the return, that the party has no right to the office, though in other respects the return be bad, yet the court will not grant a peremptory mandamus. Bull. N. P. 207. S. 14. Say. 39. The return is conclusive, until falsified by the verdict of a jury, that the party in this case has no right to the office, or to the certificate he claims; therefore the writ ought not to issue. The return too, states a material fact, which must be taken as true,' and which deserves the serious consideration of this court. And there is another fact of a like nature, which appears from the proceedings, and ought to be noticed. The first is, th'at *186 Ecter Edwards, one of the persons who was appoin-ed to manage the election at Darlington court-house, ¿lid not appear there, and act as manager. The second is, that the same Peter Edwards did not appear, and act with the other persons, appointed managers of the elections for Darlington district, at the scrutiny which took place.
There is nothing in the objection, that only three, of the six managers, met to count over the votes, since one manager from each place'of election did meet; and the resolution appointing the managers, directs that it shoul4 be so.
It is a general rule, that where the Legislature expressly requires a joint execution of a power; or wherever a power is given to several persons to do any particular act, they must all concur in the execution of it: unless it should be attended with manifest inconvenience to obtain it. 3 Term. Rep. 592. I do not know how far an argument ab incon-venicati, ought to have weight in such a case as this; because many acts, to be done by managers, require the exercise of judicial discretion: and all acts of judgment ought to be done- together. The pei’sons authorised to do the act, must counsel and advise, deliberate, and concur. The act to be done by them, must be done uno flatu, and proceed from their united judgment. 1 Burr. 136. 2 Black. Rep. 1017. 3 Term. Rep. 39. 8 East. 319. 2 East. 244. 13 Viner’s Abr. 421. 2 Just. 380. Co. Lit. 112. b. 113. a. 4 Burr. 2241. 3 Term *187 Rep. 199. 1 Bay, 348. On this ground, I think the election at Darlington court-house was illegal, and void ; and that the proceedings upon the scrutiny were void also. Also that the defendants were . n not competent to certiiy to the governor at all, as managers, without the concurrence of Peter Edwards, who was appointed jointly with them, to manage the elections for Darlington district, and certify in favour of the persons having the greatest number of votes for sheriff.
The managers are certainly empowered, by the wording of the act of 1808, to determine that an election held for sheriff is void; and so to certify to the governor ; but this must be done by them all conjointly, and not by a majority. At any rate, they must all be present and act together, though a majority should have a right to decide.
There is nothing I can find, in any of the acts of the Legislature, or in the resolutions respecting the appointment of managers of elections, to authorise a majority of them to act, and determine in cases of election for members of the Legislature, or of sheriff. It would be wise perhaps in the Legislature, to provide against the inconveniences which may result from the obstinacy of a joint manager, or from accident ; but until they do so, I am bound to take the law, as I find it, and am clear that I have no power, if I had the inclination, to alter or amend it. If the managers who conducted the scrutiny, were author-ised to do so, there is an end, of the question, as to *188 the right of the prosecutor to a certificate. The person who demanded the scrutiny, had a right tó do so ; and no certificate could be given until the sura-tiny was lawfully decided. It has not yet been lawfully decided; and therefore no certificate can yet be given.
Upon the whole, my opinion is, that as it must at least be doubtful and uncertain, whether the defendants are authorised and legally bound, to certify to the governor, that Nathan Hanks, the prosecutor a.has had the greatest number of votes, and has been duly elected” sheriff of Darlington district, they cannot legally be compelled so to certify; and consequently, that the decision of the court of General Sessions, directing a peremptory mandamus to issue, was erroneous, and ought to be reversed.
Bay, J.
This case comes up, by way of appeal from the circuit court, held at Darlington by Judge Nott, in March, 1812, who thought proper to order a mandamus to issue to the commissioners, commanding them to return Nathan Hanks as duly elected sheriff of said district; as it was alledged he had a plurality of votes.
1st, I am of opinion that the court of general sessions has a general superintending power over all subordinate jurisdictions, and all officers of every denomination,, created by act of Assembly, and *189 wherever they omit or refuse to do their duty, may compel them hy this writ to perform it.
2nd, I am also of opinion that the act authorising the election of sheriffs, gives the managers of those elections the same powers, and requires them to conduct themselves in the same manner, as the managers for conducting the elections of members of the Legislature ; and refers expressly to the mode of elections for members of the Senate, and House of Representatives. Members of the Legislature were formerly chosen by virtue of commissions, or writs of election, signed by the Governor of this State, in council, directed to the church wardens of the different parishes, or other persons therein named, pursuant to the directions of the act of 1721. But I consider this act as virtually repealed, or as having become obsolete, since our state constitution in 1790. Since that period, the members of both branches of the Legislature have been elected, and continue to be elected, by the joint resolves of both houses : which is now the fountain of elective franchise, and the authority by which they are chosen.
That the resolution of the Legislature of 1810, ini1-mediately preceding the election in question, au-thorises George Bruce, and Peter Edwards to hold the election for sheriff of Darlington district, at Dar-lington Court-house; William Brantlet and Moses Waters, to hold the election at the house of Elijah Hutson ; and Daniel Dubose and George Huggins to hold it at the house of Enos James*. Thus *190 ^iree distinct places, for holding the said election for district sheriff, were appointed, at three different places in the district, to be held by two managers at each place of election. And one from each place was appointed to meet at the court-house, on the Thursday after, and count the votes, and declare the election. And for the greater certainty, the governor issued his commission, or writ of election to each set of commissioners, requiring them to hold the said election pursuant to the resolution aforesaid. So far, then, with regard to the powers of the eom-missioners to hold and conduct the said election.
It was' admitted on the arguments on all hands, that only one manager (Mr. Bruce) attended at Darlington court-house, and received the votes on both days of the election ; and that the other manager (Mr. Edwards) did not attend. I am very clearly of opinion, therefore, that there was no election at Darlington court-house ; for Mr. Bruce had no ^authority to hold it by himself. No such power was given him by the Legislative resolves, or the governor’s commission, or writ, in pursuance of them. The law is well settled upon this point, that wherever a power is given to A. B. and C. jointly, they must all join in the act. It cannot be exercised by a less number than the whole, unless some special provision is made, that the act may be performed by any one or more of them.
The Campbell Town ware-house case, (1 Bay, 350.) is strong in point; in which it was deter *191 mined, that where the authority is joint, and no provision is made for a majority, or any less number of them to act,, that the whole must join, otherwise their proceedings are void. So, in the present case, the power given to the managers of the Darlington elections was joint, and no provision was made for any one of them to act alone. This court cannot by intendment, say that the act of any one of them is •valid. Upon the same ground, the return of four commissioners, out of five, on a writ of partition, was set aside, in the case of Zirn and wift Prior, at Edgefield; because the pow< joint one, and no provision was made izing the act of any less number than the them.
I therefore conclude, by observing that it is~a^' parent, that Mr. Bruce had no authority to hold the election at Darlington court-house alone; and that he had not, no one can deny. Then it must follow that one third of the district of Darlington, did not vote at all, (or at least, the proportion of it, whose votes were to be taken at the court-house,) consequently, it cannot be said that either of the candidates had a majority of the votes of the district; or that either of them was duly elected ; for one third of the votes of the district were lost, by the non- attendance of Mr. Edwards, the other manager. It was a void election, and a new one ought te have been ordered, if any power was given by the act for that purpose. But I do not see any provision, in the act, for ordering such new election. Probably *192 ^ was an event not foreseen, when the act passed % . - r / or, if foreseen, not provided for.
Upon the whole, without going further into this case, I am against directing the mandamus, to compel the managers to return a man, who does not appear to have a majority of the legal votes of the district.
Ghimke, J.
In commenting upon the several grounds, made in this case, I am sorry tti observe, that although some of the points argued in the court below, and now again moved before this court, have been long ago decided, both in the English tribunals of justice, and in our own courts, they are again brought into view, as if they were recent, and had never been determined. Surely, after a principle has been repeatedly adjudged, to reverse a revival of it, must argue a weakness of the parties’ cause, who again brings it into discussion before this court; or shews that he is willing to speculate up an the chance of finding a difference of opinion, on the Bench, whenever there has been a change of judges. Whenever a point has been ’decided, by, the judges, at Nisi Prius, or where in this court they have been decided, a' re-argument, or new views of the case, is certainly justifiable. But in the case before us, there is no such ground or pretence : for the law respecting, the power and jurisdiction of the Court of General Sessions, is laid down in all the books, to be highand transcendaat; that it keeps all *193 inferior jurisdictions within their proper bounds; and that it commands magistrates, and others, to do what their duty requires, in every case, where there is no specific remedy; and this it does by speedy and summary interposition. All the grounds, therefore,et except the 6th and 7th, have been determined to be contrary to the universal construction of the common law; and has been so decided, and (if I inay use the expression) confirmed by cases in this court; a report of one of which, viz. The Commissioners of the Tobacco inspection of Campbell Town has been reported, and published. I need, therefore, Only express my approbation of the decision Of those several grounds, by the judge presiding at the court below. The 6th and 7th points, appear to be new, and to have arisen out of this transaction, viz, that the votes taken by Bruce, at his place of election, were void, because the governor had appointed and commissioned another person jointly with Bruce, to receive such votes: and that there were but three, out of six managers, who met to count over the votes. But it does not appear, by the return of the managers, what was the nature of the commission, which they alledge was issued by the governor, and under which they declare they declare they had acted. It was, however, their duty to have set out at large, and verbatim, the commission empowering them to hold such election; that this court might have judged, and determined, on the legality of such their averment, that they were to act jointly; which, if they had done, it might have appeared, that such a commission was contrary *194 the law of the land, and could; therefore, be of no avail. They should also have shewn, under w]la(; ]aw? the governor was authorised and empow-ere<^ 1:0 *ssue commission, for the purposes aforesaid ; because, if there is no law which gives him this authority ; and none such is mentioned in the act respecting the election of the sheriffs, they were not bound to obey it; and if they had acted contrary to the tenor of such commission, but yet agreeable to some written law of the country, their election wouid have been valid. The act of 1808, declares that the election of sheriffs shall be conducted in the same manner, by the same managers, and holdenat the same places, as elections for m embers of the Assembly. And again, in thefourth clause, that all laws, regulating the election of members of the genera} Assembly, shall apply to the elections by this act prescribed to be held for the office of sheriff. Let us, therefore, turn our views to those acts, and see what are the pewers, the modet, &c.
The act of Assembly, of 1721, and which is still in force, prescribes in the second clause, that writs, for the future elections of members of Assembly, shall be issued out by the governor and council; and ■shall be directed to the churchwardens of the several parishes: or, in case there should be wanting churchwardens, in any parish, then to such other proper persons, as the governor, &c. shall nominate, &c. every one of whom are empowered to execute, &e.
*195 It appears then, by this act, that the governor had an authority given him, to appoint one or more churchwardens to hold an election, and in case of there being none, then that he should appoint other persons, every one of whom was empowered to execute the duty committed to them. By what authority then, I would ask, could the governor bind the managers to act jointly, when this law authorises each of them so appointed by him to act seperately. It may be said, that the resolves of the House appoints each place of election (Resolves o/T309) for Darlington, the district under discussion; but a resolve cannot contravene a law. But neither does the expression of the resolve, limit the power delegated to them jointly, but interpreting it by the act, which must be our guide, then every one of them so appointed and commissioned, might have held the election. This election, therefore, although held by one manager alone, is consistent with the act of Assembly of 1721, under which the members of Assembly are elected; and as the election was a.legal one, then by the shewing of the managers themselves, who acknowledged that if the votes taken by Bruce were to be counted, Hanks was duly elected. On this point I am therefore of opinion, that the motion must be discharged.
With respect to the 7th ground, as there is no provision made by any law, how the managers shall conduct themselves, after they have received the ballots at the several places of election, we must refer to, and be guided by the resolve, however different *196 ^ expressions may be as to different districts and parishes; (for we find the general term of “ the managers,” made use of forty times. The word “ joint-Iy/’ onee expressed as to “ Richland ,” and in three places u one manager from each place of election to meet, &c.” and whatever doubts might have arisen, on the generality of the expressions above referred to there can be no doubt at all with respect to this particular district, as the resolve respecting it declares u that one manager from each place of election shall meet, &c. Upon this ground, therefore, I am likewise of opinion, that the motion should be discharged.